

**SO ORDERED.**

**SIGNED this 7th day of June, 2012.**



Robert E. Nugent
United States Chief Bankruptcy Judge

_____

DESIGNATED FOR ON-LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

BRANDON J. TATUM, ) Case No. 09-12170
KAYLA L. TATUM, ) Chapter 7
    Debtors. )

## ORDER DENYING DEBTORS' MOTION TO SET ASIDE ORDER REVOKING DISCHARGE

In bankruptcy, debtors have a duty to "stay in touch."[1] The address that a debtor lists on his petition is the place where he can be served notice of any motion or complaint that is filed in the

---

[1] *See* Fed. R. Bankr. P. 4002(a)(5)("The debtor shall . . . file a statement of any change of the debtor's address.").

-1-

case.[2] Debtors who move without notifying the court of their new location run the risk of being served with notice or process and never learning of proceedings that have been filed against them. Many of those proceedings can have profound effects on their rights. Because the Court's power to relieve debtors from default orders or judgments is limited, it's important that they file notice of any change of address as promptly as possible. Failing to do that can have grave consequences.

Brandon and Kayla Tatum moved from their home on North 1st Street in Mulvane in November of 2009, four months after filing their chapter 7 case here. They never filed a change of address form with the Court, nor did they tell their attorney, Mark J. Lazzo, or the trustee, Steven Speth. Not surprisingly, they say they did not receive a series of letters from Lazzo forwarding demands by the trustee for their 2009 tax refund. The Tatums also claim that they did not receive from the Court copies of the turnover order concerning the refund, the summons issued in the trustee's adversary proceeding for revocation of their discharge, or the Court's May, 2011 orders revoking their discharge and entering judgment against them for the refund. Only when judgment creditor Hentzen Contractors, Inc. began to garnish Brandon's wages in June of 2011 did the Tatums realize that their discharge had been revoked. Then they acted swiftly to repay the $1,445 income tax refund that the trustee had sought all along and promptly filed this Motion to set aside the revocation of their discharge, which the trustee does not oppose.[3] Hentzen, however, does object, arguing that the debtors benefitted from holding the income tax refund for a year and that they have

---

[2] Fed. R. Bankr. P. 7004(b)(9)(debtor may be served by summons and complaint mailed to address shown in petition "or to such other address as the debtor may designate in a filed writing.").

[3] Dkt. 45.

-2-

generally acted in bad faith.[4] An evidentiary hearing on the Motion was held April 17, 2012.[5]

*Facts*

In April of 2007, the Tatums' home on Pearl Street in Mulvane burned. They hired Hentzen and other contractors to repair it and incurred $24,000 in unpaid expenses. Their insurer paid them approximately $29,000, some in joint payee checks to the Tatums and other parties, and about $20,000 to them alone. Because the insurance proceeds were insufficient to pay all contractors the Tatums failed to pay Hentzen in full. In April 2008, Hentzen obtained judgment against the Tatums in a state court limited actions case and began to execute. The Tatums sold their home in October of 2008 and paid off their mortgage. They filed this bankruptcy case on July 10, 2009 and were granted a discharge on November 19, 2009.

When they filed, they lived in a rented home on North 1st Street in Mulvane. In November of 2009, they moved to a home on Edgewood Drive. They did not file as change of address with the Court nor did they tell Lazzo they'd moved. Brandon Tatum testified that he received some mail that had been received at 1st Street from their landlord despite having filed a forwarding order with the post office, but he did not recall receiving anything from the Court or counsel at Edgewood.[6] The Tatums signed their tax return on February 4, 2010, and applied for a refund anticipation loan.[7] After Lazzo wrote them a letter on April 29 requesting a copy of the return, they supplied it in the next

---

[4] Dkt. 47.

[5] Debtors appeared in person and by their attorney Mark Lazzo. Hentzen Contractors appeared by its attorney Kurt A. Harper.

[6] That forwarding order expired after one year, or approximately November 2010.

[7] Ex. J.

-3-

19 days. Lazzo sent the 2009 tax return to Speth on May 18.[8] The Tatums did not forward the estate's share of their refund, though they had been directed by the trustee to do so at the § 341 meeting on September 11, 2009, and their counsel had previously advised them not to spend any refund they may receive.

The refund anticipation loan documents suggest that they likely received the proceeds of the loan within a few days of filing their return or shortly after February 4.[9] Per the loan's terms, when the return was processed and the refund issued, it would be directly deposited to an account held by the lender. The Tatums probably didn't have possession of the refund by the time their lawyer requested it in late May.[10]

The tax return reflected the Tatums' then-current address on Edgewood, but both the trustee and their counsel continued to direct mail to the Tatums at North 1st Street.[11] Mr. Tatum said that he didn't receive the motion for turnover filed by the trustee or the turnover order entered in July, 2010.[12] In late July, Lazzo notified Speth that he could not locate the debtors.[13]

In late February of 2011, the trustee filed an adversary proceeding to revoke the Tatums'

---

[8] Ex. 3, Ex. K.

[9] See Ex. J, Application, p. 2 (Refund Anticipation Loans on returns that are electronically filed are funded within 2 days of the return's filing).

[10] Ex. 4.

[11] By June of 2010, the Tatums had moved again, from the Edgewood address to an address on Willow Lane.

[12] Ex. 5, Dkt. 23.

[13] Ex. 7. There is no record in the court's file of the motion notice or the order being returned to the court as undeliverable, but that alone does not mean that the mail wasn't delivered. It may simply have been delivered to the Tatums' old address and retained by the then-occupant.

-4-

discharge for failure to comply with the court's turnover order.[14] In his complaint, the trustee alleged that the debtors had disobeyed a court order in violation of § 727(a)(6)(A) and that they had knowingly and fraudulently retained estate property in violation of § 727(d)(2).[15] He attempted mail service on them at the North 1st Street address, the address in their petition.[16] When they did not answer, he filed a motion for default judgment to which no one objected and took default judgment, but only on the (a)(6)(A) disobedience claim. A journal entry revoking their discharge was entered in the adversary proceeding on May 10, 2011.[17] On May 17, 2011, the Court's mailing containing the judgment and journal entry was returned marked "forwarding order expired," noting that the forwarding address was to Willow Lane.[18] That suggests the debtors did not receive a copy of the default judgment from the Court. An Order Revoking Discharge was entered in the main case on May 31, 2011 and the case was closed.[19] The Tatums deny ever receiving a copy of this order. By this time, they lived on Mundell Street and their forwarding order had long since expired.

Tatum testified that he never received Lazzo's letters or any other mailings concerning the turnover motion, the turnover order, or the summons and complaint for the adversary proceeding.[20]

---

[14] Adv. No. 11-5064. By this time, the forwarding order for the Tatums' mail had expired.

[15] Ex. 8.

[16] *Id.*

[17] Adv. Dkt. 10, 11.

[18] See Adv. Dkt. 12 and 13.

[19] Dkt. 29. The bankruptcy case was reopened in July of 2011 upon the trustee's motion. *See* Dkt. 33, 36.

[20] Specifically, Tatum denied receiving correspondence from his attorney dated April 29, 2010 (Ex. 3), May 27, 2010 (Ex. 4), and June 4, 2010 (Ex. 5) regarding the Tatums' 2009 tax returns and refunds and the trustee's demand therefore. All of these letters were addressed to the

Case 09-12170    Doc# 85    Filed 06/07/12    Page 5 of 12

Nor did he acknowledge receiving the order revoking discharge or the judgment entered in the adversary and, as noted above, the court's docket contains two returned mail notices concerning the judgment.[21] Mr. Tatum testified that he would have been able to repay the 2009 refund at any time during this course of events had he received any of the notices. Mr. Tatum's demeanor on the stand was respectful and sincere, even under well-executed cross examination, and I found his testimony credible.

Immediately after the Tatums' discharge was revoked, Hentzen resumed post-judgment collection activities by garnishing Brandon Tatum's wages. Tatum's employer advised him of the garnishment in June or July of 2011 and he contacted his counsel. This was when he first learned of the tax refund issue. Tatum paid the estate's share of the 2009 refund plus court costs to the trustee by hand-delivery of a cashier's check in the amount of $1,445.19 on July 26, 2011 and filed this Motion to set aside the discharge revocation order on August 10, 2011.[22] Hentzen claims that the debtors have acted in bad faith by not being forthcoming about some of their assets during the case and by spending the tax refund on a motorcycle rather than remitting it to the trustee. The evidence about these allegations is inconclusive at best and, in any event, not essential to the Court's legal conclusion.

---

Tatums at the North 1st Street address but the Tatums had moved from 1st Street in November of 2009 and were living on Edgewood. Similarly, service of the trustee's June 2010 motion for turnover was attempted on the Tatums at the 1st Street address. Ex. 5. The summons and adversary complaint were also served by first class mail addressed to the Tatums at the 1st Street address and which they deny having received. Ex. 8. Nor did they receive their attorney's urgent letter of March 3, 2011 (using the 1st Street address) advising them that the trustee had filed an adversary proceeding against them and their need to contact him. Ex. 9.

[21] Also notable is the lack of any undelivered mail notices in the record for a series of notices issued and mailed by the court from October of 2011 to March of 2012.

[22] Ex. 10; Dkt. 45.

*Analysis*

The Tatums' Motion does not specify any legal grounds for relief from the order revoking their discharge in the main case. I construe the Motion as one for relief from the judgment in the adversary proceeding and the order revoking their discharge entered in the main case. That implicates Fed. R. Bankr. P. 9024 which, in turn, makes Fed. R. Civ. P. 60(b) applicable in bankruptcy cases.[23] To the extent that granting relief from the default judgment in the adversary proceeding would be required here, Rule 55 concerns arise, too.[24]

The Tatums' Motion is timely. Requests for relief from judgment under Rule 60(b)(4), (5), or (6) must be made within a reasonable time.[25] The Tatums' Motion was brought within a reasonable time from entry of the order and judgment of revocation and promptly upon the Tatums' discovery that their discharge had been revoked.[26]

The Tatums' story is somewhat compelling: through an omission they claim was inadvertent, they never received actual notice of several adverse actions taken against them in this case and they have lost their discharge. Their effort to recover it is stymied by a creditor who took no action to challenge their relief while the bankruptcy estate was being administered, but has now benefitted from what is essentially a windfall – the revocation of their discharge for other reasons and the

---

[23] Fed. R. Bankr. P. 9024.

[24] Fed. R. Bankr. P. 7055 makes Fed. R. Civ. P. 55 applicable to adversary proceedings. Rule 55(c) permits relief from the clerk's entry of default for "good cause" and incorporates relief under the provisions of Rule 60(b) for relief from the default judgment.

[25] Fed. R. Civ. P. (c)(1).

[26] *See Orner v. Halala,* 30 F.3d 1307 (10th Cir. 1994) (A motion brought under Rule 60(b)(4) "is not subject to any time limitation," quoting *V.T.A., Inc. v. Airco, Inc.,* 597 F.2d 220, 224 n. 9 (10th Cir. 1979), because a void judgment is a nullity from the outset).

-7-

resuscitation of its judgment. Sympathy is on the debtors' side, but the law is not. Because their loss is largely the result of their omission, the law leaves little latitude for their relief.

*The Order Revoking Discharge is Not Void: Fed. R. Civ. P. 55(c) and 60(b)(4)*

Rule 60(b)(4) gives the Court discretion to relieve a party from the effects of a void judgment. The Tatums argue that the adversary judgment that underlies the revocation order is void because they never received notice of the summons and complaint that the trustee mailed to North 1st Street. Notwithstanding this argument's facial appeal, the trustee's service was complete. Fed. R. Bankr. P. 7004(b)(9) authorized the trustee to serve the summons and complaint on the Tatums by first class mail "at the address shown on the petition" or at whatever other address they filed with the court.[27] He did. Neither the judgment against the Tatums nor the order revoking their discharge are void for lack of service. It is true that the trustee had the Tatums' tax return that contained the Tatums' then-current address on Edgewood and further true that the Tatums' attorney advised the trustee in late July of 2010 that attempts to contact the Tatums had been unsuccessful and he could not reach them. Arguably the trustee had reason to know that the 1st Street address was invalid when he mailed the summons and complaint to that address on March 1, 2011. Nevertheless, many courts hold that Rule 7004(b)(9) permits reliance on the petition address when serving by first class mail, whether it is the correct address or not.[28] Thus, notwithstanding Brandon Tatum's credible testimony

---

[27] Rule 7004(b)(9) governs not only the service relative to the adversary proceeding, it also governs the trustee's motion for turnover. *See* Fed. R. Bankr. P. 9014(b) which makes Rule 7004's service provisions applicable to contested matters brought by motion.

[28] *See In re Park Nursing Center, Inc.,* 766 F.2d 261 (6th Cir. 1985) (Predecessor of Rule 7004(b)'s service by first class mail did not violate due process and withstood constitutional challenge); *Cossio v. Cate (In re Cossio),* 163 B.R. 150, 156 (9th Cir. BAP 1994) *aff'd* 56 F.3d 70 (9th Cir. 1995) (declaration that summons and complaint were never received is insufficient to controvert fact of first class mailing); *In re Coggin,* 30 F.3d 1443, 1450 n. 8 (11th Cir. 1994),

-8-

that he never received the summons and complaint, service upon him was complete when it was mailed.[29]

Neither does Rule 55(c) avail the Tatums of relief from the default judgment. To be granted relief from a default judgment, the Tatums must look to Rule 60(b).[30] To reopen the default judgment, the debtors needed to show that the default was not the result of their culpable conduct, that granting the relief would not prejudice other parties, and that they had a meritorious defense.[31] To the extent their inaction was the consequence of lack of notice, the responsibility for that is entirely at their feet – as noted above, they did not keep the Court or counsel apprised of their whereabouts. Relieving them from this revocation judgment and order would prejudice all of their prepetition creditors by operating to discharge all of their creditors' pre-petition debts and to prevent those creditors from proceeding against them. Nor can the Tatums show that they had a meritorious defense to the adversary complaint's charge that they violated a lawful court order as specified by

---

*abrogated on other grounds, Kontrick v. Ryan,* 540 U.S. 443 (2004); *In re Zecevic,* 344 B.R. 572 (Bankr. N.D. Ill. 2006).

[29] *See In re Vincze*, 230 F.3d 297, 299-300 (7th Cir. 2000)(Rule 7004(b)(9) service is constitutionally adequate; the rule does not require proof of receipt, only that the complaint and summons be mailed to the debtor and attorney at the address listed in debtor's bankruptcy petition); *In re Wallace,* 316 B.R. 743, 747 (10th Cir. BAP 2004) (Service was complete when mailed to debtor's address of record, notwithstanding that a different address for homestead property was listed on bankruptcy schedules.).

[30] A clerk's entry of default, a necessary predicate to the entry of a default judgment under Rule 55(b), was neither requested nor entered in accordance with Rule 55(a). *See Garrett v. Seymour*, 217 Fed. Appx. 835, 838 (10th Cir. 2007). Relief from a clerk's entry of default is available for "good cause," a lesser standard than that to which a motion for relief from a default judgment under Rule 60(b) is exposed.

[31] *U.S. v. Timbers Preserve,* 999 F.2d 452, 454 (10th Cir. 1993); *In re Wallace,* 298 B.R. 435 (10th Cir. BAP 2003), *aff'd* 99 Fed. Appx. 879 (10th Cir. May 28, 2004) (debtor not entitled to relief from default judgment where default resulted from debtor's own culpable conduct and debtor made no showing of a meritorious defense)

§ 727(a)(6)(A). To defend against that claim, the Tatums would need to show that the turnover order was either not lawful, that they had never received notice of it, or that complying with it would have been impossible.[32] No one argues that the order was unlawful and, as noted above, they were properly served with it. At trial, Tatum testified that he was prepared at all times to render the estate's share of the refund to the trustee, a statement that cuts against any claim that performance of the order was impossible.

In short, the Tatums could easily have prevented this turn of events by notifying counsel of their move and filing a change of address form with the Court.[33] Service by mail upon them was complete when mailed to the address on their petition, even if it was the wrong address.[34] The discharge revocation judgment and order are not void.

*The Tatums' Payment Did Not "Satisfy" the Judgment: Fed. R. Civ. P. 60(b)(5)*

With their payment to the trustee of the estate's share of the income tax refund, the Tatums have complied with the Court's turnover order. But they have not satisfied the revocation judgment in a way that would warrant relief under Rule 60(b)(5). As I noted in *In re Jacobs*, the part of the judgment that revoked their discharge is not one susceptible to satisfaction.[35] Unlike the *Jacobs* case, this is not a matter in which the debtors appear to have purposefully dogged the process for collecting refunds. Once they acknowledged their liability, they promptly paid it. Still, their distress

---

[32] *Standiferd v. U.S. Trustee,* 641 F.3d 1209, 1212 (10th Cir. 2011)

[33] Fed. R. Bankr. P. 4002(a)(5).

[34] *See* Fed. R. Bankr. P. 9006(e) (service of process or other papers, or notice, by mail is complete on mailing)

[35] *In re Jacobs,* 2008 WL 4369273 (Bankr. D. Kan., Sept. 22, 2008, Nugent, B.J.)(rejecting debtor's effort to set aside revocation of discharge under Rule 60(b)(5) and (b)(6)).

-10-

is largely the consequence of their failing to keep in touch with the Court and counsel. Even if they did not receive actual notice of the turnover order or the default judgment, they were properly served at the last address they provided the Court.

*No Other Reason Justifies Relief: Fed. R. Civ. P. 60(b)(6)*

Nor is general relief under Rule 60(b)(6)'s "any other reason justifying relief" provision available on these facts. The Tenth Circuit has held that a court only has discretion to grant relief under this subsection "in extraordinary circumstances and only when necessary to accomplish justice."[36] As Professor Wright noted, "[T]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests."[37] Here, the Tatums took no steps to keep the Court or their counsel informed as to their whereabouts or where they could receive mail. They received their refund loan proceeds shortly after the February 4 return was filed, but did not supply the estate's share as both the trustee and their attorney had directed at the § 341 meeting, held months before, until June of 2011 – 16 months after they received the money.

*Conclusion*

I do not reach this conclusion lightly. The trustee, the representative of all the creditors, has not opposed this motion. During the case, Hentzen contented itself with filing a claim and settling for a very small dividend. When the Tatums' discharge was revoked, it essentially received a

---

[36] *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996); *See also Marcus Food Co. v. DiPanfilo,* 671 F.3d 1159, 1166 (10th Cir. 2011) (Relief under Rule 60(b) is "extraordinary and may only be granted in exceptional circumstances.") .

[37] The Late Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, 11 FEDERAL PRAC. AND PROC. § 2864, p. 359 (2d ed. 2012), *see Ackermann v. U.S.*, 340 U.S. 193, 196 (1950).

-11-

windfall that it is understandably reluctant to give up. While the equities here are close, the law is clear. In these circumstances, relief from the judgment should not be granted. While I would prefer to grant the Tatums equitable "absolution," the law does not support that result.

The debtors' motion to vacate the order revoking their discharge is DENIED.

# # #